New York
Northern California
Washington DC
São Paulo
London
Paris
Madrid
Hong Kong
Beijing
Tokyo

**Davis Polk**

**James P. Rouhandeh**

Davis Polk & Wardwell LLP
450 Lexington Avenue New York, NY 10017
212 450 4835 tel
rouhandeh@davispolk.com

November 10, 2020

Re: *Lee, et al. v. Binance, et al.*, No. 20-cv-02803 (ALC) (S.D.N.Y.)

VIA ECF

Honorable Andrew L. Carter
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Dear Judge Carter:

We represent defendants[1] in the above-referenced action and write pursuant to Your Honor's Individual Practices to request a pre-motion conference and set out the principal bases for defendants' anticipated motion to dismiss the Amended Class Action Complaint (the "ACAC") (Dkt. No. 43) pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(2) and the doctrine of *forum non conveniens*.

**Background.** Binance is a foreign cryptocurrency exchange whose operations are located entirely outside of the United States. (ACAC ¶¶ 23-27.) The Individual Defendants are Binance executives who have no U.S. connection. (*Id.* ¶¶ 28-30.) Other than their titles, the ACAC includes no allegations as to their roles or conduct relating to this litigation. Plaintiffs are cryptocurrency traders from Texas, Nevada, New York, Florida, Puerto Rico, and California, who opened trading accounts with Binance beginning in 2017. (*Id.* ¶¶ 15-22, 366, 377.) Plaintiffs allegedly agreed to Binance's terms of use, which—since at least February 2019—have required mandatory arbitration of legal disputes. (*Id.* ¶ 340.) Plaintiffs allege that they executed transactions on Binance with unidentified third parties to buy and sell nine cryptocurrency tokens. (*Id.* ¶¶ 1, 14.)[2] Plaintiffs do not allege that Binance sold them *even a single token*. The sum total of Binance's alleged conduct is that it (i) advertised its trading services; (ii) agreed to list tokens; (iii) announced listings via email and social media; (iv) republished third-party research about tokens on its website; and (v) provided trading services, including currency conversion and an FAQ. (*Id.* ¶¶ 80, 87, 94-96.) Nowhere does the ACAC allege that Binance urged plaintiffs (or anyone else) to purchase any particular tokens or managed the flow of material, token-related information to potential investors. Plaintiffs spend much of their complaint alleging that the tokens are securities (*id.* ¶¶ 115-326),[3] and that they did not

[1] The defendants are Binance and "Individual Defendants" Changpeng Zhao, Yi He and Roger Wang.

[2] The ACAC makes clear that no plaintiffs transacted in three other tokens (BNT, SNT and CVC). (*Id.* Exs. A-H.)

[3] Solely for purposes of the motion to dismiss, defendants assume this allegation to be true.

discover this until April 2019, when the Securities and Exchange Commission ("SEC") published guidance analyzing digital assets as "investment contracts" under a 73-year old legal precedent (*id.* ¶¶ 9-10). Plaintiffs also allege that Binance was not registered with the SEC as a broker-dealer or national securities exchange. (*Id.* ¶¶ 11, 35, 70.) They do not, however, allege that they were unaware at any time that Binance was unregistered, or that Binance actively concealed its registration status.

The original complaint was filed on April 3, 2020 (Dkt. No. 1), and the ACAC, which added five new plaintiffs, was filed on September 11, 2020 (Dkt. No. 43). The ACAC asserts 154 causes of action under the Securities Act of 1933, the Securities Exchange Act of 1934 and the Blue Sky statutes of 49 states and jurisdictions. As set forth below, these claims suffer numerous fatal defects and should be dismissed in their entirety with prejudice for the following reasons.

**Plaintiffs' Claims are Impermissibly Extraterritorial.** The federal securities laws apply only within the United States to "transactions in securities listed on domestic exchanges and domestic transactions in other securities." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255, 267 (2010). Binance—as the ACAC concedes (ACAC ¶¶ 24-30)—has no U.S. operations and is not a domestic exchange, nor are plaintiffs' transactions domestic merely because plaintiffs were in the United States when they transacted through Binance. *See, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014).

**Plaintiffs Do Not Allege that Binance "Sold" Securities.** Plaintiffs fail to allege that Binance "offer[ed] or s[old]" securities as Section 12(a)(1) of the Securities Act requires. 15 U.S.C. § 77l(a)(1). The ACAC neither alleges that Binance "(1) passed title, or other interest in a security, to a buyer for value, [nor] (2) successfully solicit[ed] the purchase." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). Indeed, the ACAC does not allege that Binance—a cryptocurrency *exchange*—sold tokens to anyone or encouraged plaintiffs to purchase any specific token, let alone that any plaintiff purchased tokens "as a result" of Binance's actions. *See Griffin v. PaineWebber*, Inc., No. 99 CIV. 2292 (VM), 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001). No case has permitted Section 12 claims to proceed against an exchange on a solicitation theory. Re-publishing third-party research or providing general trading services is not "solicitation" as a matter of law. *See, e.g.*, *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016).

**Plaintiffs Cannot Pursue Exchange Act Registration Claims.** Sections 5 and 15 of the Exchange Act do not create private rights of action against exchanges and broker-dealers for failing to register with the SEC. *See Forsberg v. Always Consulting, Inc.*, No. 06-CV-13488 (CS), 2008 WL 5449003, at *11 (S.D.N.Y. Dec. 31, 2008), *Goodman v. Shearson Lehman Bros.*, 698 F. Supp. 1078, 1086 (S.D.N.Y. 1988). Nor can plaintiffs use Section 29(b) to bootstrap the registration provisions into a viable claim. No court has *ever* allowed Section 29(b) claims against an unregistered exchange, and the ACAC—with no allegation that Binance sold tokens—lacks plausible support for its conclusory assertion that Binance is a broker-dealer. Further, Section 29(b) allows voiding a contract only where there is privity and the contract, on its face, requires a performance that violates the Exchange Act. *See Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992); *see also Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*, 18 Civ. 4201 (LGS), 2019 WL 1368570 at *13 (S.D.N.Y. Mar. 26, 2019). Here, the ACAC does not and cannot allege that plaintiffs are in privity with Binance on the allegedly illegal contracts—Binance's purported listing contracts with token issuers. (ACAC ¶¶ 365, 376.) Nor does it (or can it) allege that *plaintiffs*' contracts with Binance—the terms of use—*required* illegal acts. (*Id.* ¶¶ 366, 377.)

**Plaintiffs' Claims Are Time-Barred.** Plaintiffs' Securities Act claims are time-barred because plaintiffs allege that all of their transactions in seven tokens occurred more than a year before they filed the original complaint, and as to the other two, plaintiffs do not allege that Binance *solicited* them—i.e., the alleged "violation"—to purchase these tokens during that one-year period. 15 U.S.C. § 77m. The Exchange Act claims likewise are time-barred because plaintiffs do not allege that they ever were unaware of Binance's registration status—i.e., the alleged violation of Sections 5 and 15—and thus they discovered the "violation" when they allegedly entered into Binance's terms of use more than one year before filing the original complaint. *See Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016). While the ACAC alleges that plaintiffs did not discover that the tokens were unregistered securities until the SEC published its guidance in April 2019, that is irrelevant: Section 12 claims are not tolled for lack of discovery, and the Section 29(b) claims do not turn on the sale of unregistered tokens but on *Binance*'s purported failure to register *itself*. In any event, the SEC's guidance merely applied the Supreme Court's 73-year-old "investment contract" test to digital tokens, which the SEC had already done in multiple prior statements and enforcement actions against alleged token issuers.

**Plaintiffs' Blue Sky Claims Fail for the Same Reasons as their Federal Claims and for Lack of Any Nexus.** Plaintiffs fail to state any Blue Sky claims because all such claims require allegations that Binance "offered" or "sold" a security—which the ACAC does not and cannot allege. Nearly all of the Blue Sky claims also fail because plaintiffs do not allege any nexus to 46 states under whose laws plaintiffs purport to assert those claims. *See Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 156 (2d Cir. 2017).

**All Claims Arising from Transactions on or After February 20, 2019, Are Subject to Arbitration.** The ACAC admits that pursuant to Binance's terms of use, claims arising out of transactions that occurred on or after February 20, 2019, are subject to mandatory arbitration in Singapore. (ACAC ¶ 340.) Upon creating an account on the Binance website, all users, including plaintiffs, were required to acknowledge that they had read and accepted the terms of use, and such "clickwrap" agreements as enforceable. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases). Plaintiffs' agreement to arbitrate these claims therefore requires dismissal pursuant to the doctrine of *forum non conveniens. Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

**The Control Person Claims Against the Individual Defendants Should Be Dismissed.** Because the ACAC fails to allege primary liability for any claims, the control person claims against the Individual Defendants fail. *See, e.g.*, *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 207–07 (2d Cir. 2009). Moreover, plaintiffs fail to make "a prima facie showing that jurisdiction exists" as to the Individual Defendants. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010). The ACAC alleges *no* conduct as to Mr. Wang and Ms. He, and, as to Mr. Zhao, alleges only that U.S. residents could view his Twitter posts and that he has been interviewed by English-language news outlets. (ACAC ¶ 79.) Such allegations are insufficient as a matter of law. *See Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*, No. 18 Civ. 3528 (SFJ) (ARL), 2019 WL 2504039, at *10 (E.D.N.Y. June 17, 2019). Furthermore, aside from alleging the Individual Defendants' corporate titles (which are insufficient), the ACAC does not allege any facts to support a plausible inference that they exercised actual control over the transactions in question. *See Youngers*, 195 F. Supp. 3d at 524; *In re Alstom SA*, 406 F. Supp. 2d 433, 486-87 (S.D.N.Y. 2005).

For the foregoing reasons, defendants respectfully request a pre-motion conference so that they may move to dismiss the ACAC in its entirety with prejudice.

Respectfully submitted,

/s/ *James P. Rouhandeh*

James P. Rouhandeh