**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JD ANDERSON, CORY HARDIN, ERIC LEE, BRETT MESSIEH, DAVID MUHAMMAD, RANJITH THIAGARAJAN, CHASE WILLIAMS, and TOKEN FUND I LLC individually and on behalf of all others similarly situated, | Case No. 1:20-cv-02803 |
| *Plaintiffs*, | |
| v. | |
| BINANCE, CHANGPENG ZHAO, YI HE, and ROGER WANG, | |
| *Defendants*. | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND/OR TO COMPEL ARBITRATION**

DAVIS POLK & WARDWELL LLP

James P. Rouhandeh
Daniel J. Schwartz
M. Nick Sage
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Counsel for Defendants Binance and Changpeng Zhao*

## TABLE OF CONTENTS

Pᴀɢᴇ

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................2

    I.     PLAINTIFFS' FEDERAL CLAIMS FAIL BECAUSE THE
           SECURITIES LAWS DO NOT APPLY TO EXTRATERRITORIAL
           TRANSACTIONS ..................................................................................................2

    II.    PLAINTIFFS' §12(A)(1) CLAIM FAILS.................................................................4

    III.   PLAINTIFFS' EXCHANGE ACT CLAIMS FAIL ................................................6

    IV.   PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED.................................8

    V.    ALL OF PLAINTIFFS' CLAIMS ARE SUBJECT TO ARBITRATION............10

    VI.   PLAINTIFFS' BLUE SKY LAW CLAIMS FAIL .................................................12

    VII.  THE CONTROL PERSON CLAIMS AGAINST MR. ZHAO FAIL...................13

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    2021 WL 1178216 (S.D.N.Y. Mar. 29, 2021) ...................................................................... 14

*Akbar v. Bangash*,
    2017 WL 4334912 (E.D. Mich. July 17, 2017) ................................................................. 8

*Alpha Capital Anstalt v. Oxysure Sys.*,
    216 F. Supp. 3d 403 (S.D.N.Y. 2016) .............................................................................. 10

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) .............................................................................. 14

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) .............................................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 2, 6

*Barron v. Helbiz Inc.*,
    2021 WL 229609 (S.D.N.Y. Jan. 22, 2021) ...................................................................... 4

*Bell v. Cendant Corp.*,
    293 F.3d 563 (2d Cir. 2002) ............................................................................................. 11

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) ............................................................................... 11

*In re Bibox Group Holdings Ltd. Sec. Litig.*,
    2021 WL 1518328 (S.D.N.Y. Apr. 16, 2021) .......................................................... 1, 9, 13

*City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*,
    637 F.3d 169 (2d Cir. 2011) ............................................................................................. 8

*EMA Fin., LLC v. Vystar Corp.*,
    336 F.R.D. 75 (S.D.N.Y. 2020) ....................................................................................... 7

*EMA Fin., LLC v. Vystar Corp.*,
    2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021) ............................................................. 6, 7

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
    873 F.3d 85 (2d Cir. 2017) ............................................................................................... 4

*Gingras v. Think Fin., Inc.*,
   922 F.3d 112 (2d Cir. 2019) ............................................... 12

*Griffin v. PaineWebber, Inc.*,
   2001 WL 740764 (S.D.N.Y. June 29, 2001) ........................... 5

*Hayes v. Delbert Servs. Corp.*,
   811 F.3d 666 (4th Cir. 2016) ............................................. 12

*Holsworth v. BProtocol Found.*,
   2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ................... *passim*

*Hormel Foods Corp. v. Jim Henson Prods. Inc.*,
   73 F.3d 497 (2d Cir. 1996) ................................................. 2

*Koch v. Christie's Int'l plc*,
   699 F.3d 141 (2d Cir. 2012) ............................................... 9

*Lack v. Mizuho Bank*,
   2019 WL 4239128 (C.D. Cal. June 24, 2019) ................... 13, 14

*Langan v. Johnson & Johnson Consumer Comps., Inc.*,
   897 F.3d 88 (2d Cir. 2018) ............................................... 13

*Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*,
   2015 WL 5098119 (S.D.N.Y. Aug. 31, 2015) ........................ 11

*Meyer v. Uber Techs, Inc.*,
   868 F.3d 66 (2d Cir. 2017) ............................................... 11

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) .......................................................... 2

*In re Petrobras Sec. Litig.*,
   150 F. Supp. 3d 337 (S.D.N.Y. 2015) ................................... 5

*Pinter v. Dahl*,
   486 U.S. 622 (1988) .......................................................... 4

*In re Poseidon Concepts Sec. Litig.*,
   2016 WL 3017395 (S.D.N.Y. May 24, 2016) ....................... 2, 4

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010) ............................................. 12

*In re Rhodia S.A. Sec. Litig.*,
    531 F. Supp. 2d 527 (S.D.N.Y. 2007) ................................................. 14

*Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*,
    2015 WL 5098119 (S.D.N.Y. Aug. 31, 2015) ......................................... 11

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ................................................. 10

*SEC v. Hansen*,
    1984 WL 2413 (S.D.N.Y. Apr. 6, 1984) ................................................. 8

*SEC v. Martino*,
    255 F. Supp. 2d 268 (S.D.N.Y. 2003) ................................................. 8

*SEC v. Nutra Pharma Corp.*,
    450 F. Supp. 3d 278 (E.D.N.Y. 2020) ................................................. 8

*Shron v. LendingClub Corp.*,
    2020 WL 3960249 (S.D.N.Y. July 13, 2020) ......................................... 11

*Slomiak v. Bear Stearns & Co.*,
    597 F. Supp. 676 (S.D.N.Y. 1984) ................................................. 7

*Smith Barney Shearson Inc. v. Sacharow*,
    689 N.E.2d 884 (N.Y. 1997) ................................................. 11

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999) ................................................. 10

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017) ......................................... 3, 14

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) ................................................. 11

*In re Tezos Secs. Litig.*,
    2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ......................................... 4

*TradeComet.com LLC v. Google, Inc.*,
    435 F. App'x 31 (2d Cir. 2011) ................................................. 12

*United States v. Georgiou*,
    777 F.3d 125 (3d Cir. 2015) ................................................. 2

*Valle v. ATM Nat., LLC*,

No. 14-CV-7993 KBF, 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ..................................... 10

*Verragio, Ltd. v. SK Diamonds*,
   2017 WL 1750451 at *4 (S.D.N.Y. May 4, 2017) ................................................................ 14

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998) ................................................................................................ 7

*Zakinov v. Ripple Labs, Inc.*,
   2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ........................................................................ 5

## STATUTES & RULES

15 U.S.C. § 77l(a)(1) ..........................................................................................................8
15 U.S.C. § 77m .................................................................................................................. 8
Cal. Corp. Code § 25507 ................................................................................................... 13
P.R. Laws Ann Tit. 10, § 890 ............................................................................................ 13

## TABLE OF DEFINITIONS

As used in this memorandum of law, the below terms have the meanings ascribed to them:

| TERM | DEFINITION |
|---|---|
| defendants | The defendants remaining in this action, Binance and Changpeng Zhao |
| Exchange Act | Securities Exchange Act of 1934 |
| Framework | The SEC framework for analyzing digital securities, released April 3, 2019 |
| Individual Defendants | Changpeng Zhao, Yi He, and Roger Wang |
| Mem. or Motion | Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Class Action Complaint and/or Compel Arbitration |
| Opp. or Opposition | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Class Action Complaint |
| Rouhandeh Decl. | Declaration of James Rouhandeh in Support of Defendants' Motion to Dismiss the Second Amended Class Action Complaint and/or Compel Arbitration |
| SACAC | Plaintiffs' Second Amended Class Action Complaint |
| Securities Act | Securities Act of 1933 |
| Terms of Use | Binance Terms of Use, attached as exhibits 1, 12, and 13 to the Rouhandeh Decl. |
| Tokens | The twelve cryptocurrency tokens currently or formerly at issue in this case: EOS, BNT, SNT, QSP, KNC, TX, FUN, ICX, OMG, LEND, ELF, and CVC |

## CITATION CONVENTIONS

Non-case citations in this memorandum of law use the following formats:

| SOURCE | CITATION |
|---|---|
| Reply Ex. [•] at [•] | Exhibit to the Reply Declaration of James Rouhandeh in Further Support of Defendants' Motion to Dismiss the Second Amended Class Action Complaint and/or Compel Arbitration |
| Rouhandeh Decl. Ex. [•] at [•] | Exhibit to the Declaration of James Rouhandeh in Support of Defendants' Motion to Dismiss the Second Amended Class Action Complaint and/or Compel Arbitration |
| ¶ [•] | Paragraph in Plaintiffs' Second Amended Class Action Complaint |

With respect to case citations in this memorandum of law, unless otherwise stated, all emphasis and alterations have been added and all internal quotation marks and citations have been omitted.

## PRELIMINARY STATEMENT

Since defendants filed their Motion, plaintiffs have abandoned much of this lawsuit. They voluntarily dismissed all claims against two of the Individual Defendants and abandoned their claims related to three Tokens (BNT, CVC, and SNT), apparently acknowledging that they had no standing to sue based on Tokens they never bought or sold.  Plaintiffs have thus admitted some, but not all, of the many deficiencies in the SACAC.

During the same period, moreover, two judges in this district dismissed with prejudice *identical* claims brought by these plaintiffs, basing those dismissals in part on the *same* arguments defendants advanced here.[1]  Following those dismissals, plaintiffs voluntarily dismissed *five* materially similar actions, effectively conceding that their claims in those cases— which largely mirror their claims here—were hopelessly deficient.  Plaintiff David Muhammad also tacitly acknowledged that his claims relating to the TRN Token lacked merit by dismissing them in another action against the issuer.

The Opposition does nothing to salvage Plaintiffs' remaining claims here.  It overstates the SACAC's allegations and mischaracterizes defendants' arguments and the case law.  As the Motion established and as the Opposition fails to refute, plaintiffs' claims must be dismissed as a matter of law for at least seven reasons:  (1) the federal securities laws do not apply to plaintiffs' Token purchases because Binance is not a domestic exchange and plaintiffs do not sufficiently allege that their transactions were domestic; (2) defendants, who neither sold Tokens nor solicited plaintiffs' purchases, are not statutory "sellers" under §12 of the Securities Act; (3) plaintiffs cannot identify any illegal contracts with Binance that are voidable under §29(b) of the

---

[1] *In re Bibox Group Holdings Ltd. Sec. Litig.* ("*Bibox*"), 2021 WL 1518328 (S.D.N.Y. Apr. 16, 2021) (Cote, J.); *Holsworth v. BProtocol Found.*, 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) (Hellerstein, J.).

Exchange Act; (4) plaintiffs' claims are time barred, and no discovery rule or tolling doctrine exists that can salvage them; (5) all of plaintiffs' claims are subject to arbitration as plaintiffs agreed in the Terms of Use; (6) the Blue Sky claims fail for the same reasons as the federal claims and because the SACAC alleges no connection to most of the states whose laws plaintiffs invoke; and (7) the SACAC does not allege facts to support jurisdiction over Mr. Zhao or a finding that he controlled Binance's allegedly relevant conduct.

Having amended their complaint twice, plaintiffs should not be given another bite at the apple.  For the reasons in the Motion and below, the SACAC should be dismissed with prejudice.

## ARGUMENT

## I.  PLAINTIFFS' FEDERAL CLAIMS FAIL BECAUSE THE SECURITIES LAWS DO NOT APPLY TO EXTRATERRITORIAL TRANSACTIONS

Plaintiffs' claims should be dismissed as extraterritorial because their Token purchases do not satisfy either prong of *Morrison*.  (Mem. 7-12); *see also Holsworth*, 2021 WL 706549, at *3.  As plaintiffs concede (Opp. 7), Binance has not registered as a "national securities exchange"; it thus is not a "domestic exchange" under *Morrison*'s first prong.[2]  Unable to distinguish defendants' authorities,[3] plaintiffs attack a strawman, asserting that if defendants are

---

[2] Rather than being presumed true (Opp. 5), plaintiffs' assertions that Binance is a "national securities exchange" and their transactions were domestic lack any alleged factual basis; they are legal conclusions that are not credited.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Plaintiffs do not attempt to distinguish *Morrison* itself, which equated a "domestic exchange" with a "national securities exchange."  *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266-67 (2010).  In other words, unless a security is listed on a registered national securities exchange, it does not trade on a "domestic exchange" under *Morrison*.  *Id.* at 267.  Nor are the rulings that defendants cited from other cases dicta (Opp. 7); in each, a court determined that an unregistered securities market was not a "domestic exchange" after argument and as part of its essential reasoning, *see Hormel Foods Corp. v. Jim Henson Prods. Inc.*, 73 F.3d 497, 508 (2d Cir. 1996).  (*See* Mem. 8 (citing *United States v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015); *In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *12 (S.D.N.Y. May 24, 2016)).)  That these cases concerned over-the-counter markets is no basis to distinguish them.

correct, "all exchanges *within the U.S.* that ignore their obligations to register with the SEC" could marshal the same defense (Opp. 7).  But plaintiffs miss the point with their irrelevant hypothetical.  An alleged exchange, such as Binance, whose facilities are *not* within the United States is foreign and need not register with the SEC; trades on such an exchange are not transactions in securities listed on a "domestic exchange."  (Mem. 8.)

The Opposition fails to identify any U.S. facilities or trading operations that could render Binance "domestic."  Plaintiffs abandon any argument based on the Tokens' cross-listing on U.S. exchanges.  (Mem. 10.)  They concede that Binance has no U.S. headquarters or offices, and that the overwhelming majority of its users are foreign.  (Opp. 6.)  They assert that much of Binance's "infrastructure" is U.S.-based, but identify only computer servers owned by Amazon and Ethereum blockchain servers allegedly utilized by the *Tokens*, not Binance.  (Opp. 5 (citing ¶¶ 24, 56-59, 328).)  Third-party computers in the United States do not make Binance a national securities exchange.  *See Sonterra Capital Master Fund v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 582 (S.D.N.Y. 2017).  The Opposition cites other purported U.S. contacts—e.g., the Binance website's use of English, Binance's supposed corporate structure, an alleged handful of California employees, and isolated U.S. job postings—but fails to link them to Binance's trading platform operations or any registration requirement.[4]  (Mem. 8-9; Opp. 5-6.)  Unsurprisingly, plaintiffs do not cite any case holding that such factors can render an exchange domestic.

Plaintiffs' transactions also were not domestic.  *See Holsworth*, 2021 WL 706549, at *3. Trades on a foreign exchange are foreign as a matter of law, even if placed from the United

---

[4] Plaintiffs' assertions that Binance promoted the sale of digital assets in the United States and directed users to use VPN connections to purchase tokens (Opp. 6), likewise fall short.  The "promotion" allegation is entirely conclusory and lacks any factual basis (¶ 29), while the VPN allegation has nothing to do with the United States, beyond plaintiffs' speculation that it is well-known that VPNs can be used to circumvent restrictions on U.S. IP addresses (¶ 82).

States (Mem. 10-11 (citing cases)).  And that is all plaintiffs allege (Opp. 8-9).[5]  It is also irrelevant that parts of the Ethereum blockchain are in the U.S. (Opp. 9) because the blockchain is merely "machinery for generating, administering, and delivering" cryptoassets, and has nothing to do with where irrevocable trading liability is incurred.  *Barron v. Helbiz Inc.*, 2021 WL 229609, at *6 (S.D.N.Y. Jan. 22, 2021).[6]

## II.   PLAINTIFFS' §12(A)(1) CLAIM FAILS

Binance is not a statutory seller subject to §12 liability because it neither passed title to the Tokens to plaintiffs nor solicited Token purchases by plaintiffs or anyone else (Mem. 12-14). *See Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988); *Holsworth*, 2021 WL 706549, at *3.

As defendants explained, the SACAC alleges that plaintiffs "purchased Tokens *on* Binance," (¶¶ 15-22), not *from* Binance.  That is not a sufficient allegation to survive a motion to dismiss.  Nor is plaintiffs' new argument that transacting on Binance requires a user to "first transfer the desired crypto-asset[] to Binance's control by executing a transaction on the Ethereum blockchain."  (Opp. 10.)  Paragraph 58 of the SACAC—the *only* paragraph plaintiffs cite for this proposition—contains no such allegation, and merely states that all token transactions occur over the ERC-20 blockchain, which is irrelevant to whether Binance passed title.  But even if the SACAC alleged what plaintiffs now assert, those allegations would not suffice because plaintiffs do not contend that Binance ever *owned* the Tokens, and purported

---

[5] Plaintiffs base their contrary view solely on cases that do not address *Morrison* at all, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 156-158 (2d Cir. 2017),  or that concern trades executed *in the United States*, *not* on a foreign exchange, *Poseidon*, 2016 WL 3017395, at *12.  Such cases are irrelevant to this issue.

[6] *In re Tezos Securities Litigation*, 2018 WL 4293341, at *8 (N.D. Cal. Aug. 7, 2018), is not to the contrary.  There, unlike here, the plaintiff bought tokens through a website run from California, based on marketing from California that "almost exclusively targeted" U.S. residents.

*control* of an asset to facilitate a transaction between others has no bearing on who the seller is. *See In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 342 (S.D.N.Y. 2015) (settling notes through Depository Trust Company does not evidence "formal weight of transfer of title").[7]

Nor did Binance solicit plaintiffs' purchases. The Opposition does not identify *any* case holding that defendants' alleged activities—i.e., announcing new Token listings, informing users over social media that Tokens were available, appearing in interviews to "promote *Binance*" (not the Tokens), "displaying detailed price and trading data of the Tokens," and republishing third-party research (Opp. 10-11)—constitute solicitation.[8] Indeed, case law establishes just the opposite. (*See* Mem. 13-14.) Were plaintiffs correct, entities like CNBC that publish information about securities would be statutory sellers under §12. That is not the law.

Defendants do not, as plaintiffs assert, "attempt to import a reliance requirement into Section 12." (Opp. 12.) Rather, defendants demonstrated that plaintiffs could not and did not allege that Binance actually solicited *their* purchases—as the case law requires (Mem. 13) and as Judge Hellerstein recently confirmed, *Holsworth*, 2021 WL 706549, at *3. Relying on cases outside the Second Circuit, plaintiffs assert that the Court can "infer" that defendants solicited their purchases. (Opp. 12-13 (citing ¶¶ 15-22.) But no such inference is permissible in this district. *See, e.g.*, *Griffin v. PaineWebber*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001). In

---

[7] Plaintiffs cite *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *12 (N.D. Cal. Feb. 26, 2020) for the proposition that §12 liability extends to "any person who engaged" in the distribution of the security, but *Zakinov* is inapposite because there, unlike here, plaintiffs alleged that the defendant cryptocurrency *issuer* actually sold its tokens to the public and took numerous steps to press the wide-scale purchase and adoption of its own specific token, *id.* at *4, *12.

[8] Plaintiffs again take liberties with the SACAC, converting allegations of mere Token listing announcements into allegations of supposed "promot[ion]" and "encourage[ing]" Token purchases. (*Compare* Opp. 11 with ¶¶ 92, 95-96.) Plaintiffs also reference "reward programs" (Opp. 11), but as defendants demonstrated, that allegation concerned a single Token (FUN) and had no connection to any of plaintiffs' alleged transactions. (Mem. 12 n.13.)

any event, the only allegations plaintiffs cite for this supposed "inference"—that they purchased pursuant to "solicitations from Binance"—are entirely conclusory and lack any factual basis. Courts do not credit such allegations even at the pleading stage.  *See Ashcroft*, 556 U.S. at 678.[9]

### III.   PLAINTIFFS' EXCHANGE ACT CLAIMS FAIL

As defendants demonstrated, plaintiffs cannot allege §29(b) claims based on Binance's purported failure to register as an exchange or broker-dealer.  (Mem. 14-19.)  The Opposition mischaracterizes the SACAC and case law, but still cannot allege any voidable contracts.

#### A.  Plaintiffs Do Not Allege a Facial Violation of the Exchange Act or Privity

Plaintiffs fail to allege at least two of §29(b)'s requirements—(i) a contract that "involved a prohibited transaction" and (ii) the plaintiff "is in contractual privity with" the defendant with respect to such a transaction.  *EMA Fin., LLC v. Vystar Corp.*, 2021 WL 1177801, at *2 (S.D.N.Y. Mar. 29, 2021).

*First*, plaintiffs do not allege that Binance's Terms of Use—their only alleged contracts with Binance—required the performance of an illegal act at the time those contracts were made. (Mem. 15-17.)  There is no allegation that the Terms of Use on their face required anyone to trade unregistered securities (the purported illegal act) or anything else, and plaintiffs do not allege that there would have been any violation if they had traded only registered cryptoassets or non-securities.  Plaintiffs respond by claiming that each transaction over Binance was its own separate contract (Opp. 14), but—tellingly—they fail to cite the SACAC for these so-called "Token purchase contracts" because no such allegations are there.  Plaintiffs cannot amend their

---

[9] By contrast, three of the plaintiffs submitted affidavits in the *Tron* action averring that they had "visited Tron's website, reviewed Tron's whitepaper, and saw its social media posts." (Reply Exs. 1 - 3 ¶ 4.)  Binance did not issue the Tokens that any plaintiff allegedly purchased, but plaintiffs' failure to make any similar claims regarding Binance is nonetheless telling.

SACAC through briefing.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

Plaintiffs appear to assert that the Terms of Use violated the Exchange Act "as in fact performed"

(Opp. 14), but that is the wrong legal test.  Section 29(b) permits rescission only if the contract

*requires* performance of an illegal act on its face—*as the cases cited by plaintiffs themselves*

*hold*.[10]  Plaintiffs' failure to identify any provision of the Terms of Use that required Binance to

perform an illegal act mandates dismissal.  *See EMA Fin., LLC*, 2021 WL 1177801, at *3

(dismissing §29(b) claim based on party's failure to "indicate[] any way in which the [subject]

Agreements . . . require EMA" to "act[] as an unregistered broker-dealer").

Second, and independently, the §29(b) claim fails for lack of privity.  While plaintiffs

emphasize Binance's purportedly illegal contracts with alleged Token issuers (Opp. 14-15), they

cannot allege that plaintiffs *themselves* were parties to those contracts (Mem. 16-17).  Plaintiffs

label their alleged privity with Binance as "inherent" based on their trades on the Binance

platform (Opp. 16), but fail to explain how such trading could possibly make them parties to

Binance's contracts with alleged issuers.  This allegation lacks any factual basis.

**B.  Plaintiffs Fail to Allege Any Underlying §15 Violation**

To the extent predicated on a purported §15 violation, plaintiffs' §29(b) claim fails for a

separate reason: plaintiffs cannot allege that Binance was a "broker" or a "dealer."  (Mem. 17-19.)

Plaintiffs do not meaningfully dispute that Binance does not satisfy the statutory definitions of

---

[10] *See, e.g.*, *EMA Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 81, 82 (S.D.N.Y. 2020)
(contracts voidable "*only* if they were illegal at the time they were made, not because Ema later
engaged in an illegal transaction"; allegations were insufficient because party did not "identify a
provision in the contracts that *obligates*" counterparty to act as unregistered broker-dealer, and
contracts "*could be performed* without violating" securities laws); *Slomiak v. Bear Stearns & Co.*,
597 F. Supp. 676, 682 (S.D.N.Y. 1984) (contract not voidable where "the violation alleged []
was [not] inseparable from the performance of the contract plaintiff was seeking to rescind," as
opposed to where "*there could be no performance* under the contract without violating the Act").

"broker" and "dealer."  They argue instead that Binance is a broker-dealer because it "regularly participate[s] in securities transactions," and charges commissions. (Opp. 16-17), but the cases plaintiffs cite make clear that additional allegations based in fact are needed.[11]  Because the SACAC contains nothing more, plaintiffs have not sufficiently alleged that Binance had any duty to register as a broker-dealer and cannot base a §29(b) claim on its alleged failure to do so.

## IV.   PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED

### A.   The Securities Act Claims Are Time-Barred

Plaintiffs' §12(a)(1) claims are barred by the one-year statute of limitations, which runs from the "violation."  15 U.S.C. § 77m.  Plaintiffs' concession that "Section 12(a)(1) does not have an express discovery rule" (Opp. 19) is dispositive because plaintiffs' claims as to all but two Tokens concern transactions that occurred *more* than one year before they filed their original complaint.[12]  (Mem. 19-20.)  Notwithstanding the statute's unambiguous language, plaintiffs

---

[11] *See SEC v. Nutra Pharma Corp.,* 450 F. Supp. 3d 278, 291 (E.D.N.Y. 2020) ("calling investors, mailing invitations to promotional events, and attending dinners and lunches and making promotional pitches"); *SEC v. Martino*, 255 F. Supp. 2d 268, 273–74 (S.D.N.Y. 2003) ("furnish[ing] potential purchasers with company information, . . . filings and press releases," "maintain[ing] constant contact with her investors," and "advis[ing][] investors regarding the sale terms that [company] favored"); *SEC v. Hansen*, 1984 WL 2413, at *2 (S.D.N.Y. Apr. 6, 1984) (defendant "frequently prepared letters . . . extoll[ing] the virtues of [investment] programs," "placed advertisements in newspapers, sponsored seminars and social events, and used gifts, bumper stickers and other promotional items to induce" investor purchases).

[12] Plaintiffs' claims as to the two Tokens they allegedly purchased within one year of filing (EOS and TRX) are also untimely because plaintiffs have not alleged any "violation" by Binance during that period.  (Mem. 20-21.)  Defendants do not, as plaintiffs contend, argue that the statute of limitations runs from when "Binance *first* solicited Token purchases" (Opp. 18), but rather from when Binance *last* engaged in allegedly wrongful conduct.  *See Akbar v. Bangash*, 2017 WL 4334912, at *3 (E.D. Mich. July 11, 2017).  Nor are plaintiffs correct that the "violation" must coincide with *their* purchases (Opp. 18).  Section 12(a)(1) makes clear that the relevant "violation" is an "offer[] or s[ale] . . . in violation of" Section 5, 15 U.S.C. § 77l(a)(1), the requirements of which do not turn on *purchase*.  The only case plaintiffs cite for this position is inapposite: it dealt with the accrual of Rule 10b-5 claims, which unlike §12 claims, turn on *discovery*.  *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.,* 637 F.3d 169, 175 (2d Cir. 2011).

contend that equitable tolling doctrines of injury evading discovery or the fraud-based discovery rule apply (Opp. 19), but two judges in this district flatly rejected those arguments as a matter of law. *Bibox*, 2021 WL 1518328, at *8-10; *Holsworth*, 2021 WL 706549, at *3. Moreover, plaintiffs' only asserted basis for tolling—the April 2019 publication of the Framework— disclosed no new facts about the Tokens or the alleged violations. (Mem. 22-25.) The Framework expressly did *not* represent the SEC's official views and solely purported to summarize *existing* guidance for assessing when a cryptoasset is a security under longstanding precedent—an area the SEC had previously addressed in formal orders and enforcement actions. (Mem. 23-25.) Plaintiffs do not dispute *any* of this. Accordingly, the Framework could not toll the statute of limitations. *Bibox*, 2021 WL 1518328, at *9.[13]

## B. The Exchange Act Claims Are Time-Barred

Plaintiffs' §29(b) claims also are untimely because plaintiffs asserted them over one year after forming their allegedly illegal Terms of Use contracts with Binance. (Mem. 21-22.) As defendants established, (i) §29(b) has a one-year statute of limitations that runs from discovery of the violation; (ii) the alleged violation here was Binance's purported failure to register; and (iii) plaintiffs do not allege that they ever were unaware of Binance's lack of registration (which was public information) or that Binance concealed its registration status. The Opposition does not dispute these points. Instead, plaintiffs mistakenly contend that their claims are timely because

---

[13] Nor can plaintiffs invoke tolling under the fraudulent concealment doctrine. (Opp. 21.) Plaintiffs point to alleged statements by Token *issuers*, which are irrelevant to any purported concealment by *Binance*. *Koch v. Christie's Int'l plc*, 699 F.3d 141, 157 (2d Cir. 2012) (plaintiff must allege that "*defendant* wrongfully concealed material facts"). The only statement plaintiffs attribute to Binance—that it "purports not to 'report[] on companies that issue securities or on securities generally'" (¶ 341)—did not conceal any material fact, and plaintiffs do "not indicate how [it] prevented [them] from discovering [their] claim" despite their reasonable diligence, which they do not even allege. *Koch*, 699 F.3d at 157; *accord Bibox*, 2021 WL 1518328, at *10.

Binance maintained an unregistered exchange in the year before plaintiffs filed the original complaint.  (Opp. 24.)  This, however, is irrelevant, given plaintiffs' knowledge of Binance's registration status when they entered into the Terms of Use.  *See Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016) (§ 29(b) defense to subsequent sales was time-barred because statute of limitations began running when defendants discovered that plaintiff's agent was unregistered as broker-dealer at time of original agreement).

## V.     ALL OF PLAINTIFFS' CLAIMS ARE SUBJECT TO ARBITRATION

All of plaintiffs' claims should be dismissed in favor of arbitration in Singapore or Switzerland.  (Mem. 26-30.)  Plaintiffs do not dispute that Binance's Terms of Use—to which plaintiffs agreed—contain an arbitration clause, class action waiver, and forum selection clause, all of whose terms are facially enforceable.  Rather, plaintiffs argue only that they should not be bound by the arbitration and forum provisions.  Each of plaintiffs' arguments should be rejected.

*First*, plaintiffs Anderson and Williams argue that their claims are not subject to arbitration because they last purchased on Binance before Binance incorporated the arbitration clause.  But plaintiffs ignore (and do not even address) that Binance's Terms of Use bind its users to any updates so long as they continue using Binance.  (Mem. 28; Rouhandeh Decl. Ex. 1 at 10, Ex. 11 at 7, Ex. 12 at 4-5.)  *See Valle v. ATM Nat'l., LLC*, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) ("[C]ustomers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms.").  Because plaintiffs do not allege they ever stopped using Binance, they *all* are bound by Binance's current Terms of Use.[14]

---

[14] All of plaintiffs' claims, regardless of when the underlying transactions took place, are subject to arbitration, because the arbitration clause "does not contain any temporal limitation . . . ."  *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999); *see also Guan v. Uber Techs.*, 236 F. Supp. 3d 711, 726-27 (E.D.N.Y. 2017) (arbitration clause with no temporal limit applied to prior-arising claims).

*Second*, plaintiffs argue that Binance failed to provide sufficient notice of the arbitration provision. (Opp. 27–30.) But as the cases cited by plaintiffs demonstrate, this matters only when the plaintiff disclaims knowledge of the relevant provision, and here, no plaintiff alleges *not* to have been aware of the arbitration clause from the moment it was introduced.[15]

*Third*, plaintiffs assert that Binance cites the "wrong law" in seeking to enforce the arbitration clause, and should instead have discussed Swiss or Singaporean law. (Opp. 30.) But plaintiffs ignore that "the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). Federal courts facing that question "generally apply the choice-of-law rules of the state in which they are located—in this case, New York." *Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, 2015 WL 5098119, at *4 (S.D.N.Y. Aug. 31, 2015). As a result, absent a demonstrated conflict—which plaintiffs have not shown—New York law governs enforceability. *See, e.g.*, *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 220 (S.D.N.Y. 2015). And New York law, like federal law, strongly favors enforcing arbitration clauses. *See, e.g.*, *Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884, 888-89 (N.Y. 1997).

*Fourth*, plaintiffs assert that enforcing the arbitration provision would improperly insulate Binance from the U.S. securities laws (Opp. 31), but this is a red herring. Plaintiffs do not dispute that courts routinely hold U.S. securities claims to be arbitrable and enforce agreements selecting arbitration in Switzerland and Singapore. (Mem. 29 n.29.) Every case that plaintiffs

---

[15] *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002) (notice relevant where plaintiffs testified they did not view arbitration agreement); *Shron v. LendingClub Corp.*, 2020 WL 3960249, at *4 (S.D.N.Y. July 13, 2020) (similar) (citing *Meyer v. Uber Techs, Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017) (similar)); *Berkson v. Gogo* LLC, 97 F. Supp. 3d 359, 366 (E.D.N.Y. 2015) (same, where plaintiffs alleged arbitration provision was "hidden" and "never seen or agreed to by them").

rely on is off-point because those cases concerned arbitration agreements that would have required plaintiffs to waive their statutory rights.[16]  Binance's Terms of Use contain no such provision, and plaintiffs do not allege otherwise.

In a final effort to avoid arbitration, plaintiffs argue that the clause applies only to claims arising on or after February 20, 2019 because the clause compels arbitration only of "any claims relating to this Agreement."  (Opp. 32.)  But plaintiffs overlook that the clause also applies to claims "relating to . . . any services . . . provided."  (*E.g.,* Rouhandeh Decl. Ex. 1 at 21.)  Because plaintiffs' claims exclusively relate to services that Binance allegedly provided, those claims are covered by the arbitration clause, regardless of when the services allegedly were provided.[17]

## VI.    PLAINTIFFS' BLUE SKY LAW CLAIMS FAIL

Plaintiffs do not dispute that their Blue Sky claims under California, Florida, Nevada, Puerto Rico, and Texas law are analogous to their federal claims and thus fail for the same reasons.  (Mem. 30.)  Nor do plaintiffs dispute that each of their other Blue Sky claims contains a statutory nexus requirement that requires the allegedly illegal purchase or sale to take place within the state.  (Mem. 30-31.)  Plaintiffs argue only that they have *standing* to assert Blue Sky claims on behalf of absent class members.  (Opp. 32-33.)  As Judge Cote recently held, however, this is irrelevant at the motion to dismiss stage, prior to certification of any class, when named plaintiffs proceed solely on their own behalf.  *Bibox*, 2021 WL 1518328, at *4.  Plaintiffs do not

---

[16] *See* Opp. 31 (citing, *inter alia*, *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 127 (2d Cir. 2019) (arbitration agreement disclaimed application of federal and state law); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 673-74 (4th Cir. 2016) (same); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (noting in dicta that an agreement that would "preclude a plaintiff from pursuing her statutory rights" should be modified)).

[17] The cases plaintiffs cite do not support their position.  (*See* Opp. 32 (citing, e.g., *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34 (2d Cir. 2011) (forum selection clause applied to prior-arising claim)).)

contend that they can satisfy the statutory nexus requirements for all of the Blue Sky claims, and they cite no case allowing plaintiffs to assert claims under the laws of a state in which they did not transact.[18]  *Holsworth*, 2021 WL 706549, at *3 (Blue Sky claims defective for failure to allege "some connection between the security and the regulatory reach of the state agency").[19]

## VII.    THE CONTROL PERSON CLAIMS AGAINST MR. ZHAO FAIL

In addition to plaintiffs' failure to allege any primary violation, the control person claims should be dismissed because (1) this Court lacks personal jurisdiction over Mr. Zhao, and (2) the SACAC does not adequately allege his control over Binance's relevant conduct.  (Mem. 31-35.)

*First*, the Opposition makes clear that this Court lacks jurisdiction over Mr. Zhao. Plaintiffs do not identify any allegations that Mr. Zhao sold Tokens in the United States or purposefully availed himself of the opportunity to conduct activities here.  (Mem. 33-34; Opp. 34.)  The sole alleged basis for jurisdiction is Mr. Zhao's alleged use of Twitter.  But the SACAC does not allege that Mr. Zhao tweeted from the United States, targeted U.S. Binance users or "caused plaintiff[s], or anyone else, to purchase digital coins."  *Holsworth*, 2021 WL 706549, at *2.  *Lack v. Mizuho Bank*, cited by plaintiffs, is off-point; the foreign CEO there allegedly "controlled all aspects of" company business and had multiple suit-related forum contacts through the company website, including making the allegedly misleading statements

---

[18] Neither case that plaintiffs cite has anything to do with Blue Sky laws.  *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) (unfair trade practices acts); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 47-51 (1st Cir. 2018) (antitrust laws).

[19] Plaintiffs' California and Puerto Rico law claims, which are subject to one- and two-year statutes of limitations, also fail because they are untimely.  *See* Cal. Corp. Code § 25507; P.R. Laws Ann Tit. 10, § 890; (*see supra* Point IV).  Although the Court need not reach the issue, many of the other Blue Sky law claims are time-barred for the same reasons.  (*See* Reply Ex. 4.) While plaintiffs mistakenly contend that defendants did not challenge the timeliness of the Blue Sky claims (Opp. 26), defendants argued that plaintiffs' Blue Sky claims failed for "precisely the reasons" as the federal claims (Mem. 30), which included the statute of limitations.

*giving rise to the plaintiff's claims*. *Id.*, 2019 WL 4239128, at *1, 5-6 (C.D. Cal. June 24, 2019).[20]  The SACAC makes no similar allegations.  The cases plaintiffs cite confirm that Mr. Zhao's alleged *general* use of Twitter to promote Binance is insufficient for jurisdiction.  *See Verragio, Ltd. v. SK Diamonds*, 2017 WL 1750451 at *4 (S.D.N.Y. May 4, 2017) (jurisdiction requires a "clear articulable nexus between the business transacted and the cause of action").  Nor is Mr. Zhao's status as Binance's CEO sufficient for jurisdiction (Opp. 34); senior executive status "does not, without more, amount to sufficient minimum contacts."  *In re Rhodia S.A. Secs. Litig.*, 531 F. Supp. 2d 527, 542 (S.D.N.Y. 2007); *accord In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 2021 WL 1178216, at *19 (S.D.N.Y. Mar. 29, 2021).[21]

*Second*, plaintiffs do not dispute that control person claims require specific factual allegations of "control"—alleging that an individual is an officer or director does not suffice. (Mem. 34.)  Plaintiffs' sole response is a reference to boilerplate allegations regarding Mr. Zhao's role as CEO and Binance's general policies that do not speak to his specific responsibilities.  (Opp. 35 (citing ¶¶ 1, 26-30, 82-84).)  Those allegations are insufficient.  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005).

---

[20] While the Opposition asserts that Mr. Zhao "was responsible for deciding which tokens were listed on Binance" (Opp. 35), the paragraphs plaintiffs cite from the SACAC merely quote certain of Mr. Zhao's tweets that have nothing to do with deciding which Tokens Binance would list on its platform, much less the United States.  The Opposition also asserts that SACAC paragraph 98 and Exhibit 3 of the Roche Declaration show that Mr. Zhao "regularly promoted the sale of cryptocurrencies . . . in person in the U.S." (Opp. 34), but those sources discuss Mr. Zhao's tweets and say nothing regarding his alleged presence in the United States.

[21] The solicitation-cases plaintiffs cite are irrelevant because the SACAC does not allege that Mr. Zhao ever solicited a single purchase or sale.  Moreover, plaintiffs' throwaway request for jurisdictional discovery (Opp. 35) should be denied because they have failed to make a prima facie showing of jurisdiction.  *Sonterra*, 277 F. Supp. 3d at 599.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the SACAC be dismissed with prejudice in its entirety and/or that the Court compel arbitration of plaintiffs' claims in Singapore or Switzerland.

Dated:    June 3, 2021
          New York, New York

                                        DAVIS POLK & WARDWELL LLP

                                        By:    */s/ James P. Rouhandeh*
                                               James P. Rouhandeh

                                        James P. Rouhandeh
                                        Daniel J. Schwartz
                                        M. Nick Sage
                                        Davis Polk & Wardwell LLP
                                        450 Lexington Avenue
                                        New York, New York  10017
                                        Telephone: (212) 450-4000
                                        Facsimile: (212) 701-5835
                                        rouhandeh@davispolk.com
                                        daniel.schwartz@davispolk.com
                                        m.nick.sage@davispolk.com

                                        *Counsel for Defendants Binance and Changpeng Zhao*

15