**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JD ANDERSON, CORY HARDIN, DAVID MUHAMMAD, RANJITH THIAGARAJAN, and CHASE WILLIAMS, individually and on behalf of all others similarly situated,** | |
| *Plaintiffs*, | **20-cv-02803 (ALC)** |
| -against- | **OPINION & ORDER** |
| **BINANCE AND CHANGPENG ZHAO,** | |
| *Defendants*. | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs bring the instant class action against Defendants Binance and Changpeng Xiao alleging various claims under federal and state securities law in connection with Defendants' promotion, offering, and sale of digital tokens on the Binance.com platform. Pending before the Court are Defendants' motion to compel arbitration, ECF No. 112, Defendants' letter motion to seal certain exhibits in their motion to compel arbitration, ECF No. 116, and Defendants' letter motion to seal certificate of service, ECF No. 143.

At issue is the enforceability of Binance.com's 2019 Terms of Use Agreement as to Plaintiffs, users of the platform. Defendants argue that the 2019 Terms of Use require Plaintiffs to resolve their claims in arbitration and waive Plaintiffs' rights to sue in a class action. The Court finds that Plaintiffs' claims that accrued prior to February 20, 2019 are not bound by arbitration because Plaintiffs did not have sufficient notice of Defendants' modification of their Terms of Use from the 2017 version to the 2019 version. Alternatively, even assuming proper notice, the Court holds that the lack of any language regarding temporal floors, ceilings, or any space in between prevents the modification from applying to claims accrued before the effective

1

date. Additionally, the purported class action waiver in the 2019 Terms of Use is unenforceable based on its unclear language. Retroactivity similarly does not apply to the class action waiver.

For these reasons, after reviewing the Parties' submissions and the relevant materials, the Court **DENIES** Defendants' motion to compel arbitration, **GRANTS** Defendants' motion to seal certain exhibits, and **GRANTS** Defendants' motion to seal certificate of service.

## BACKGROUND

The Court assumes the Parties' familiarity with the facts and procedural background of this case. The Court thereby focuses on the background as it relates to the instant motion and supplemental briefing that was ordered on April 16, 2025.

## I.    <u>Factual Background</u>

Defendant Binance is a cryptocurrency exchange that facilitates trades in digital assets—including the digital tokens cited in this action—on the platform Binance.com. Third Amended Complaint, ECF No. 10 ("TAC") ¶¶ 1, 12. Defendant Zhao founded Binance and served as its Chief Executive Officer from 2017 to November 2023, when he and Defendant Binance pleaded guilty to federal crimes[1]. *Id.* ¶ 24. Defendant Zhao, a Canadian citizen, founded Binance in China, then moved the company's headquarters to Japan, and then later to Malta, before ultimately claiming that "Binance.com is not headquartered or operated in Malta . . . There are misconceptions some people have on how the world must work a certain way, you must have offices, HQ, etc. But there is a new world with blockchain now . . . Binance.com has always operated in a decentralized manner as we reach out to our users across more than 180 nations worldwide." *Id.* ¶¶ 24–26 (internal quotation marks omitted). However, "Binance has regularly

---

[1] Defendant Zhao has since been pardoned by President Donald Trump. Will Weissert & Alan Suderman, *Trump Pardons Binance Founder Changpeng Zhao, High-Profile Cryptocurrency Figure*, A.P. News (Oct. 23, 2025), https://apnews.com/article/trump-pardon-binance-changpeng-zhao-crypto-exchange-e1cb3fe516bc42b4c7ce5c107a280dc7.

and intentionally engaged in numerous online securities transactions inside the United States, with U.S. residents[.]" *Id.* ¶ 27.

Plaintiffs allege that Defendant Binance offered and sold digital tokens "without a registration statement in effect for these securities and without registering as a broker-dealer, in violation of federal and state securities laws." Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration ("Pl. Opp."), ECF No. 104 at 1; *see also* TAC ¶ 1 104. Plaintiffs "are residents of California, Nevada, and Texas who purchased tokens on Binance and now seek damages and other relief arising from Defendants' illegal offering and sale of securities." Pl. Opp. at 1 (citing TAC ¶¶ 16–20, 400).

Moreover, the Parties agree that "Plaintiffs all created their Binance accounts between September 27, 2017, and April 15, 2018." Pl's. Opp. at 2. The record shows that Plaintiffs all used Binance to varying degrees after creating their accounts: Plaintiff Hardin traded as recently as January 7, 2021; Plaintiff Muhammad traded as recently as December 31, 2020; Plaintiff Thiagarajan traded as recently as April 29, 2022; Plaintiff Williams traded as recently as February 7, 2020; and Plaintiff Anderson held assets in his account as of July 23, 2024. Defendants' Memorandum of Law in Support of Their Motion to Compel Arbitration ("Def. Br."), ECF No. 141 at 5.

When creating their Binance.com accounts, Plaintiffs agreed to be bound by Binance's Terms of Use.[2] Def. Br. at 3. At the time that Plaintiffs created their accounts, the Terms of Use

---

[2] The Court may consider extrinsic declarations and documents in deciding a motion to compel arbitration. *See Meyer v. Uber Techs. Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (a court deciding a motion to compel arbitration applies a standard similar to summary judgment, where the court may consider "all relevant, admissible evidence submitted by the parties"). The Terms of Use are also incorporated by reference into the Complaint as "documents possessed by or known to [Plaintiffs] and upon which [they] relied in bringing suit." *Underwood v. Coinbase Glob., Inc.*, 654 F. Supp. 3d 224, 237 (S.D.N.Y. 2023) (finding terms of use incorporated by reference in action against cryptocurrency trading platform), *aff'd in part, rev'd in part and remanded sub nom. Oberlander v. Coinbase Glob. Inc.*, 2024 WL 1478773 (2d Cir. Apr. 5, 2024). In deciding such a motion, Courts "draw[ ] all reasonable inferences

that were then in effect were dated July 6, 2017 (the "2017 Terms of Use"), and the Parties do

not dispute that Plaintiffs assented to the 2017 Terms of Use.  *See* Declaration of Miles Wiley

("Wiley Decl.") Exs. D, F–J at 1, ECF Nos. 115-4, 115-6–115-10.  The 2017 Terms of Use "did

not contain an arbitration clause, a choice of law provision, or a class action waiver."  Pl. Opp. at

2 (citing Wiley Decl. Ex. D, ECF No. 115-4).  However, the 2017 Terms of Use included a

change-of-terms provision stating:

> Binance may make or amend this agreement and various rules from time to time
> as needed, and announce the same on the website, without any individual notice
> to you.  The amended agreement and rules shall come into effect immediately and
> automatically upon being announced on the website.  If you do not agree to the
> relevant amendment, you shall immediately stop using Binance Service.  If you
> continue using Binance Service you shall be deemed as having accepted the
> amended agreement and rules.

Def. Br. at 3 (citing Wiley Decl. Ex. D, ECF No. 115-4).

On February 20, 2019, Binance amended the Terms of Use (the "2019 Terms of Use")

and an updated version of Binance's Terms of Use was posted on a web page with the following

language placed near the top of the page:

> PLEASE READ THESE TERMS CAREFULLY AS THEY GOVERN YOUR
> USE OF THE SERVICES.  THESE TERMS CONTAINS [sic] IMPORTANT
> PROVISIONS INCLUDING AN ARBITRATION PROVISION THAT
> REQUIRES ALL CLAIMS TO BE RESOLVED BY WAY OF BINDING
> ARBITRATION.  THE TERMS OF THE ARBITRATION PROVISION ARE
> SET FORTH IN SECTION 14 BELOW ENTITLED "RESOLVING DISPUTES:
> FORUM, ARBITRATION, CLASS ACTION WAIVER, GOVERNING LAW."
> . . . BY ACCESSING, USING OR ATTEMPTING TO USE THE SERVICES IN
> ANY CAPACITY, YOU ACKNOWLEDGE THAT YOU ACCEPT AND
> AGREE TO BE BOUND BY THESE TERMS. IF YOU DO NOT AGREE, DO
> NOT ACCESS OR USE THE SERVICES.

Wiley Decl. Ex. E, ECF No. 115-5.  The 2019 Terms of Use incorporated, among other things,

an arbitration clause that stated:

---

in favor of the non-moving party."  *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd*., 999 F.3d 828, 834 (2d
Cir. 2021) (quoting *Meyer*, 868 F.3d at 74).

> You and Binance agree to resolve any claims relating to this Agreement
> (including any question regarding its existence, validity, termination, or any
> services or products provided and any representations made by us) through final
> and binding arbitration[.]

Def. Br. at 3–4 (citing Wiley Decl. Ex. E ¶ 14(b), ECF No. 115-5).  The 2019 Terms of Use also

set forth the rules for arbitration:

> Either you or Binance may submit a dispute (after having made good faith efforts
> to resolve such dispute in accordance with subsections (a) and (b) above) for final,
> binding resolution by arbitration under the arbitration rules of the Singapore
> International Arbitration Centre ("SIAC"), which are deemed to be incorporated
> by reference.  The arbitration tribunal shall consist of a sole arbitrator to be
> appointed by the President of SIAC.  The language of the arbitration hearings
> shall be English and the seat, or legal place, of arbitration shall be Singapore.
> **Judgment on any arbitral award may be entered in any court having
> jurisdiction over the party (or the assets of the party) due and owing such
> award.**

Wiley Decl. Ex. E ¶ 14(c), ECF No. 115-5 (emphasis in original).  Additionally, the 2019 Terms

of Use state that the "Agreement is governed by the law of Singapore except for its conflicts of

laws principles, unless otherwise required by a mandatory law of any other jurisdiction."  Wiley

Decl. Ex. E ¶ 14(f), ECF No. 115-5 (emphasis in original).  The 2019 Terms of Use also advise

users to "PLEASE READ THIS SECTION CAREFULLY, AS IT INVOLVES A WAIVER OF

CERTAIN RIGHTS TO BRING LEGAL PROCEEDINGS, INCLUDING AS A CLASS

ACTION FOR RESIDENTS OF THE U.S."  Wiley Decl. Ex. E ¶ 14, ECF No. 115-5.  But there

are no provisions in the 2019 Terms of Use that detail such a waiver.

## II.   **Procedural History**

The instant motion to compel arises out of Plaintiff's filing of its TAC.[3]  On May 10,

2024, Plaintiffs filed the TAC in a class action in which they represent two Subclasses of

---

[3] For completeness, the Court provides herewith a summary of the procedural posture prior to the filing of the TAC.
On April 3, 2020,  Plaintiff Williams and a former named Plaintiff, Eric Lee, filed the initial Complaint in this case.
ECF No. 1.  On June 8, 2020, Plaintiffs Anderson, Hardin, Muhammad, Thiagarajan, and Williams (and other then-
named Plaintiffs) filed a motion seeking appointment as Lead Plaintiffs in this action.  ECF No. 23.  The Court

claimants:  (1) "[a]ll persons, including Plaintiff Anderson, who purchased on the Binance exchange any of the Tokens to the fullest extent subject to the U.S. securities laws, between July 1, 2017 and Binance's February 20, 2019 purported imposition of an arbitration clause for the first time and were harmed thereby" and (2) "[a]ll persons who purchased on the Binance exchange any of the Tokens to the fullest extent subject to the U.S. securities laws, on or after February 20, 2019, when Binance purported to impose an unenforceable arbitration clause and the present and were harmed thereby."  TAC ¶ 280.  Plaintiffs allege a number of claims under federal and state securities law against Defendants.  *Id.* ¶¶ 293–399.

On July 23, 2024, Defendants filed a motion to compel arbitration and a memorandum in support of its motion.  ECF Nos. 112, 113.  Defendants allege that Plaintiffs were bound by the 2019 Terms of Use and its arbitration provision, thus the TAC should not proceed in federal court.  *See* ECF No. 113.  On October 7, 2024, Plaintiffs filed their opposition contending that they were not bound by the 2019 Terms of Use because they received insufficient notice of the new terms and, further, that the agreement constitutes an impermissible waiver of their rights under federal securities law.  *See* ECF No. 122.  On November 13, 2024, Defendants filed their reply asserting, among other things, that Plaintiffs in fact assented to the 2019 Terms of Use through their continued use of Binance.  ECF No. 124.

On March 28, 2025, the Court issued an opinion denying Defendants' motion to compel arbitration to the extent Plaintiffs make claims that accrued before the 2019 Terms of Use were

---

granted the motion and ordered that Plaintiffs (and other then-named Plaintiffs) be named Lead Plaintiffs in this action.  ECF No. 40.  On September 11, 2020, Plaintiffs (and other then-named Plaintiffs) filed an Amended Complaint.  ECF No. 43.  On December 15, 2020, Plaintiffs (and other then-named Plaintiffs) filed a Second Amended Complaint.  ECF No. 55.  On February 16, 2021, Defendants moved to dismiss the Second Amended Complaint and/or compel arbitration.  ECF No. 58.  On March 31, 2022, the Court granted Defendants' motion to dismiss without needing to decide Defendants' prior motion to compel arbitration.  ECF No. 77.  On April 29, 2022, Plaintiffs filed a notice of appeal of the Court's grant of the motion to dismiss.  ECF No. 79.  On March 8, 2024, the Second Circuit reversed the Court's dismissal of Plaintiffs' claims.  *Williams v. Binance*, 96 F.4th 129, 133 (2d Cir. 2024).

enacted. The Court did not make a determination as to whether the 2019 Terms of Use can apply to claims accrued after the date of the 2019 arbitration clause but before the plaintiffs had actual notice in the context of this litigation. Additionally, the Court did not decide the enforceability of the putative-class action waiver in the arbitration clause. ECF No. 130.

On April 16, 2025, at the request of all the Parties, the Court vacated the March 28, 2025 Opinion and ordered the Parties to file supplemental briefing on the two outstanding issues, stating that in a new opinion, the Court would take into consideration how the supplemental briefing impacted the original decision. ECF Nos. 140, 141. On May 16, 2025, Defendants filed their Supplemental Brief in Support of their Motion to Compel Arbitration, asserting that plaintiffs who assent to an arbitration clause after actual or constructive notice must arbitrate disputes arising before the date of notice and that even silence or ambiguity in the 2019 Terms of Use would be interpreted to preclude class-wide relief. ECF No. 142. On June 16, 2025, Plaintiffs filed their Supplemental Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration, asserting, among other things, that because the arbitration clause was imposed pursuant to a unilateral change-in-terms provision, it cannot apply retroactively to claims and that the 2019 Terms of Use does not contain a class action waiver. ECF No. 151. On July 1, 2025, Defendants submitted their reply. ECF No. 151.

On November 12, 2025, the Court ordered oral arguments on November 20, 2025, on the two outstanding issues. ECF No. 153. The day before oral arguments, the Plaintiffs filed a letter dismissing the claims on or after the effective date of the agreement against all the Defendants pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(i). ECF No. 156. In light of this letter, during oral arguments on November 20, 2025, the Court found the first outstanding issue moot and ordered the Parties to file a joint stipulation dismissing the aforementioned claims. Oral Arg.

Tr. 4. On November 25, 2025, the Parties filed a joint stipulation dismissing the aforementioned

claims pursuant to "[FRCP] 15(a)(2), 41(a)(1)(A)(i), 41(a)(1)(A)(ii), and/or 41(a)(2)." ECF No.

158 at 2. On November 25, 2025, the Court signed the stipulation, thereby dismissing any claims

arising after the agreement's effective date, February 20, 2019. ECF No. 159.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), which governs arbitration agreements, an

agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court

has held that the FAA established "a liberal federal policy favoring arbitration agreements" and

that courts must "rigorously . . . enforce arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584

U.S. 497, 505–06 (2018) (citation omitted). Parties may agree to have an arbitrator decide both

"'gateway' questions of 'arbitrability'" and the merits of their contractual disputes. *Rent-A-Ctr.*

*West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *see also Henry Schein, Inc. v. Archer & White*

*Sales, Inc.,* 568 U.S. 63, 64–65 (2019). Questions of arbitrability include: "(1) 'whether the

parties are bound by a given arbitration clause' and (2) 'whether an arbitration clause in a

concededly binding contract applies to a particular type of controversy.'" *Kai Peng v. Uber*

*Techs., Inc.*, 237 F. Supp. 3d 36, 45 (E.D.N.Y. 2017) (quoting *VRG Linhas S.A. v.*

*MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013)).

When determining whether the parties have entered a valid agreement to arbitrate,

"courts should apply ordinary state-law principles that govern the formation of contracts," and

evaluate the allegations "to determine whether they raise a genuine issue of material fact."

*Sacchi v. Verizon Online LLC*, No. 14-cv-00423, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23,

2015) (internal citations and quotation marks omitted).  Indeed, when deciding a motion compel,

courts must first determine "whether the parties agreed to arbitrate" in the first place.  *Id.*

Courts must also decide "whether the issue of arbitrability is for the court or for the

arbitrator."  *Gringas v. Think Fin., Inc.*, 922 F.3d 112, 125 (2d Cir. 2019) (quoting *Bell*, 293 F.3d

at 565).  Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is

clear and unmistakable evidence that they did so."  *Schein*, 139 U.S. at 72 (quoting *First Options*

*of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The Supreme Court has "distinguished between 'questions of arbitrability,' which are to

be resolved by the courts unless the parties have clearly agreed otherwise, and other 'gateway

matters,' which are presumptively reserved for the arbitrator's resolution."  *Mulvaney Mech.,*

*Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir. 2003) (quoting

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)).  Moreover, questions of

arbitrability are subject to judicial resolution unless "there is clear and unmistakable evidence

from the arbitration agreement . . . that the parties intended that [those issues were to] be decided

by the arbitrator."  *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation

marks omitted).

## DISCUSSION

The dispositive question in this case is whether Plaintiffs assented to the 2019 Terms of

Use. The Court must first decide if there is an agreement to arbitrate.  "While federal policy

generally favors arbitration, the obligation to arbitrate nevertheless remains a *creature of*

*contract*.  Because arbitrators' authority arises only when the parties agree in advance to that

forum, 'a party cannot be required to submit to arbitration any dispute which he has not agreed

so to submit.'"  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218,

224 (2d Cir. 2001) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)) (emphasis added).

Although Binance operates in the "new world," the contract issues in this case are familiar even with the advent of Internet-based contracts.[4]  The Parties do not dispute whether Plaintiffs manifested their assent to the 2017 Terms of Use.  Indeed, Plaintiffs were required to accept the 2017 Terms of Use to proceed with the creation of their accounts.  *See* Wiley Decl. Ex. B, ECF No. 115-2.  Such contracts have been deemed "clickwrap" agreements.  *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 394–95 (E.D.N.Y. 2015) ("*Clickwrap* refers to the assent process by which a user must click 'I agree,' but not necessarily view the contract to which she is assenting.") (emphasis in original).  But this case turns on whether Plaintiff assented to the arbitration provision incorporated in the 2019 Terms of Use, which were posted on the Binance website after Plaintiffs assented to the 2017 Terms of Use.  *See* Wiley Decl. Ex. E, ECF No. 115-5.  Such agreements have been called "browsewrap" contracts and bind users through their continued use of services without their affirmative or express agreement.  *See id.* at 394 ("*Browsewrap* exists where the online host dictates that assent is given merely by using the site.") (emphasis in original).

I.    **Contract Formation**

If all Plaintiffs assented to the 2019 Terms of Use, then Defendants' motion could be resolved in Defendants' favor, given the incorporation of the choice-of-law and arbitration provisions.  To evaluate whether Plaintiffs are bound to the 2019 Terms of Use—and thus the arbitration provision—the Court must first scrutinize the daylight, if any, between Plaintiff's

---

[4] Judge Weinstein thoroughly surveyed the various kinds of electronic adhesion contracts—including clickwrap and browsewrap agreements—when considering the validity of an arbitration agreement in *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 394–403 (E.D.N.Y. 2015).

initial assent to the 2017 Terms of Use by clickwrap and their purported subsequent assent to the 2019 Terms of Use by browsewrap, all the while applying longstanding contract law.

### a.  State Substantive Law Governs the Validity of the 2019 Terms of Use

Defendants contend that Singapore law governs the validity of the 2019 Terms of Use because the 2019 Terms of Use contain a choice-of-law provision imposing Singapore law.  *See* Def. Br. at 8–9.  But in so doing, Defendants put the proverbial cart before the horse:  for the choice-of-law provision to apply to Plaintiffs—all of whom created their accounts prior to the 2019 Terms of Use—they must be found to in fact be bound by the 2019 Terms of Use.  "Relying on a contractual provision before a contract has been found to have been accepted by the parties as binding is unacceptable."  *Berkson*, 97 F. Supp. 3d 387–88.

It is clear and undisputed that Plaintiffs affirmatively assented to the 2017 Terms of Use by manifesting their assent to a clickwrap agreement.  *See* Wiley Decl., Exs. F–J at 1, ECF Nos. 115-6–115-10.  Plaintiffs, however, challenge whether they assented to the 2019 Terms of Use by way of the change-of-terms provision in the 2017 Terms of Use.  *See* Def. Br. at 3 (citing Wiley Decl. Ex. D, ECF No. 115-4).  The Court is thus required to consider the law governing the 2017 Terms of Use.  But as stated previously, there is no choice-of-law provision in the 2017 Terms of Use, so the Court cannot apply the Singapore choice-of-law provision by default.  *See Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 119, 126–27 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established.").

Where there is no choice-of-law provision in an arbitration agreement, the Court must turn to substantive state law to determine the agreement's validity.  *See, e.g., Specht v. Netscape Communications Corp.*, 306 F.3d 17, 27 (2d Cir. 2002) ("[I]n deciding whether parties agreed to arbitrate a certain matter, a court should generally apply state-law principles to the issue of

contract formation."); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable [to the determination of whether the parties agreed to arbitrate] if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state").

Courts in this district apply an interest analysis test to determine the state law that governs questions of an agreement's formation. *See Meyer v. Kalanick*, 200 F. Supp. 3d 408, 413 (S.D.N.Y. 2016), *vacated sub nom. Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017). "According to that analysis, a court 'must consider five factors: (1) the place of contracting; (2) the place of the contract negotiations; (3) the place of the performance of the contract; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, places of incorporation, and places of business of the parties.'" *Id.* (quoting *Philips Credit Corp. v. Regent Health Grp., Inc.*, 953 F.Supp. 482, 502 (S.D.N.Y. 1997).

Applying the test to the facts of this case:  (1) the contracts were entered into on the Internet; (2) the contracts were not negotiated; (3) there is no place where the contract will be performed; (4) there is no particular location of the subject matter of the contract; and (5) Binance is a decentralized company without any headquarters, but Plaintiffs are domiciled in California, Nevada, and Texas.  *See* TAC ¶¶ 16–20, 24–26, 400.  Consequently, the Court concludes that the substantive laws of California, Nevada, and Texas govern. Moreover, the laws of California, Nevada, and Texas are substantively similar with respect to contract formation. *See Alkutkar v. Bumble Inc.*, 2022 WL 4112360, at *5 (N.D. Cal. Sept. 8, 2022) ("[T]here is no conflict between Texas and California law for purposes of assent and enforceability of an

arbitration agreement."); *Augustine v. TLC Resorts Vacation Club, LLC*, 2018 WL 3913923, at

*4 (S.D. Cal. Aug. 16, 2018) (agreeing with a party in the disposition of a motion to compel that

the "outcome in this case is the same whether the Court applies Nevada or California law")[5].

### b.  Plaintiffs Had Some Reasonable Notice of the Arbitration Provision

"Where the assent to terms of a contract is 'largely passive,' as is often the case with

electronic contracts of adhesion . . . 'the contract-formation question will often turn on whether a

reasonably prudent offeree would be on notice of the terms at issue.'"  *Berkson*, 97 F. Supp. 3d at

393 (citing *Schnabel*, 697 F.3d, at 120 126–27).  Under California law, contract formation

requires mutual assent.  *See Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999);

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014) ("We agree with the district

court that Barnes & Noble did not provide reasonable notice of its Terms of Use, and that

Nguyen therefore did not unambiguously manifest assent to the arbitration provision contained

therein.").  Reasonable notice requires that a user have either constructive or actual notice of an

agreement's terms.  *See Metter v. Uber Tech., Inc.*, No. 16-cv-06652, 2017 WL 1374579, at *2

(E.D. Cal. Apr. 17, 2017). (citing *Nguyen*, 763 F.3d at 1176–79).

### i.  Plaintiffs Did Not Have Constructive Notice of the Arbitration Agreement

To support their contention that Plaintiffs had constructive notice of the 2019 Terms of

Use, Defendants cite *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097. (N.D. Cal.

2020); Defendants' Reply Memorandum of Law in Support of Their Motion to Compel

Arbitration ("Def. Reply"), ECF No. 124 at 7.  Like the instant case, *Needleman* implicates the

question of whether a defendant provided constructive notice of an arbitration provision to a user

---

[5] The Parties in this case agree that the outcome would be the same regardless of whether California, Nevada, or Texas law applies.

who previously agreed to an agreement containing a change-of-terms provision that was later amended to include an arbitration agreement.  *Id.* at 1103–05.

But the similarities end there:  the plaintiff in *Needleman* was a member of a credit union who enrolled in an online banking program and who indisputably entered into an agreement to receive electronic communications (including account disclosures) through the credit union's online banking platform.  *Id.* at 1100–02.  An account disclosure regarding arbitration with an opt-out clause was included in the June 2019 statements for online banking users and the plaintiff received an email alerting him that the statement was available for review, although the email lacked any indication that the statement enclosed a disclosure arbitration agreement.[6]  *Id.* at 1100–01.

The plaintiff never checked his June statement, but "[i]f he had, once on the 'View Statements' page, visible without scrolling under a bold 'Statement Inserts' heading would have been blue, hyperlinked, underlined text reading 'Arbitration Provision.'  Clicking on this link would have brought [the plaintiff] to a PDF of the same one-page 'IMPORTANT NOTICE' that had been inserted in the June monthly statement mailings for customers receiving statements by mail."  *Id.* at 1102.  The court held that the defendant provided constructive notice because a "reasonable user in [the plaintiff's] situation would have understood [their] obligation to utilize the 'View Statements' page to stay apprised of important disclosures.  Because [the plaintiff] explicitly accepted the terms of Golden 1''s online statements program, he was 'on notice' that critical information would be conveyed to him online rather than through the mail."  *Id.* at 1104.

---

[6] Additionally, "[f]or Golden 1 account holders who still received paper statements, this information was conveyed through a one-page insert mailed with the customers' monthly statements.  The page reads 'IMPORTANT NOTICE' at the top, with key provisions in bold.'"  *Needleman*, 474 F. Supp. 3d at 1101.

The constructive notice in *Needleman* stands in stark contrast to the obligation imposed on Plaintiffs in the instant case.  Notably, the *Needleman* defendant issued individual communications to its users containing the disclosure that advised them of the arbitration provision and allowed them to opt out.  Here, Plaintiffs received no contemporaneous individual notice of the enactment of the 2019 Terms of Use.  There is also no evidence in the record that an arbitration provision was "announced" as set out in the 2017 Terms of Use and no indication on the face of the agreement as to where Plaintiffs should look for the amendments to the terms. *See* Wiley Decl. Exs. D, O, ECF No. 115-4, 115-15.  Here—and despite the change-of-terms provision in the 2017 Terms of Use—Plaintiffs would "would have had no reason to look at the contract posted" on the Binance website (even if they use the website) because "[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *See Douglas v. United States District Court for the Central District of California*, 495 F.3d 1062, 1066 (9th Cir. 2007) (per curiam).

Indeed, to hold otherwise "would lead to absurd results:  contract drafters who included a change-of-terms provision would be permitted to bind individuals daily, or even hourly, to subsequent changes in the terms.  The absence of limits on the frequency or substance of changes in terms subverts the basic rule of contract law that '[a] contract exists where the parties assent to the same thing in the same sense, so that their minds meet.'" *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) (quoting 17A Am. Jur. 2d Contracts § 30 (August 2020 Update)).  Whereas the plaintiff in *Needleman* was reasonably put "on notice of the need to check online statements when new ones are available[,]" Plaintiffs in the instant case did not have a need to do so and therefore they did not receive sufficient constructive notice of the changed terms. *See Needleman*, 474 F. Supp 3d at 1105.

### ii.  Plaintiffs Had Actual Notice of the Arbitration Clause as Early as Their Involvement in the Litigation

However, Defendants also argue that all Plaintiffs had actual notice of the arbitration provision at least as of April 3, 2020, when the original Complaint in this case was filed.  *See* Complaint ("Compl."), ECF No. 1; Def. Reply at 7.  Indeed, the Complaint splits subclasses into (1) a group of people who purchased tokens on Binance between April 1, 2017 and February 20, 2019 (the date of "Binance's imposition of an arbitration clause") and (2) a group of people who purchased tokens on Binance after Binance imposed the clause.  Compl. ¶ 284.

"Courts have held that plaintiffs will be bound by a product's terms of use if they learn of the terms' existence during pending litigation and continue to use the product—'conduct that a reasonable person would understand to constitute assent.'"  *In re Ring LLC Priv. Litig.*, No. 19-cv-10899, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021) (holding that "[p]laintiffs' continued use of the [services in question] after being on constructive notice of the [arbitration provision] through th[e] lawsuit constitutes assenting conduct) (quoting *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020)).

The procedural timeline of this case warrants some attention:  Plaintiff Williams is the only remaining Plaintiff named in the initial Complaint, so he had actual notice of the arbitration agreement at least as early as April 3, 2020.  *See* Compl. ¶ 14.  For the rest of the Plaintiffs, the earliest date of possible actual notice in the record is June 8, 2020, the date when Plaintiffs Williams, Anderson, Hardin, Muhammed, and Thiagarajan moved jointly to be appointed lead plaintiffs in this case.  *See* ECF No. 23.  Consequently, the record shows that Plaintiffs Anderson, Hardin, Muhammed, and Thiagarajan were aware of Defendants' imposition of the arbitration agreement in the 2019 Terms of Use as early as June 8, 2020, giving way to a finding

that all Plaintiffs had reasonable notice of the 2019 Terms of Use, albeit approximately a year after the terms were enacted.

### c. The Retroactivity of the 2019 Terms of Use

The Court has already found that Plaintiffs did not have constructive notice of the 2019 Terms of Use such that any claims accruing prior to February 20, 2019 are not subject to arbitration. However, even if Plaintiffs did have constructive notice, the Court finds that the 2019 Terms of Use do not apply retroactively to claims that accrued prior to the effective date.

In *Peleg v. Neiman Marcus Grp., Inc*., the Court considered an arbitration provision that stated, "the employer may amend, modify, or revoke the arbitration contract on 30 days' written notice; at the end of the 30-day period, a contract change applies to any claim that has not been filed with the American Arbitration Association (AAA)." 204 Cal. App. 4th 1425, 1432-1433 140 Cal.Rptr.3d 38 (2012). The *Peleg* Court held that this provision rendered the contract illusory because it "*expressly* provided that any modifications would not apply to claims that had been filed before the modification was implemented. But, the modifications would apply to claims that the employer knew about or that had already accrued, if those claims had not been filed with the AAA." *Moua v. Optum Servs., Inc.*, 320 F. Supp. 3d 1109, 1113-1114 (C.D. Cal. 2018) (emphasis added) (differentiating express versus implied provisions). The provision in *Peleg* would have allowed "the employer to unilaterally change the terms of the agreement to its benefit when it anticipated a particular claim would be filed." *Id. Peleg* analyzed provisions that were silent as to whether unilateral modification would apply to known or accrued claims differently, holding that while they were not illusory, they were restricted based on the implied covenant of good faith and fair dealing. *Id.*

The arbitration provision at issue in this case states that users agree to resolve *any* claims against Binance. *See* Def. Br. at 3–4 (citing Wiley Decl. Ex. E ¶ 14(b), ECF No. 115-5). In the

Court's view, the 2019 Terms of Use are silent with respect to the time period during which the modification would apply to known or accrued claims. For instance, the arbitration provision could have said, "users agree to resolve any claims that accrued in the past two years" or even "users agree to resolve any claims that accrued any point prior to this effective date." However, Binance's unilateral modification does not give the user any temporal information. As the *Peleg* Court reasoned, under California law, "A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims." 204 Cal. App. 4th 1425, 1465 140 Cal.Rptr.3d 38 (2012). Therefore, Binance's arbitration provision cannot apply to accrued or known claims prior to February 20, 2019. For the aforementioned reasons, the Court **DENIES** Defendants' motion to compel arbitration.

## II.    <u>Class-Action Waiver</u>

The putative class-action waiver in the arbitration provision is not enforceable.  The 2019 Terms of Use contains a section titled "RESOLVING DISPUTES:  FORUM, ARBITRATION, CLASS ACTION WAIVER, GOVERNING LAW" under which users are advised to "PLEASE READ THIS SECTION CAREFULLY, AS IT INVOLVES A WAIVER OF CERTAIN RIGHTS TO BRING LEGAL PROCEEDINGS, INCLUDING AS A CLASS ACTION FOR RESIDENTS OF THE U.S."  Wiley Decl. Ex. E ¶ 14, ECF No. 115-5. But the 2019 Terms of Use are otherwise silent as to the imposition of such a waiver and there are no provisions in the 2019 Terms of Use that detail such a waiver.

Defendants argue the class action waiver is enforceable based on the language in the 2019 Terms of Use, basic principles of contract law, and Supreme Court cases on arbitration provisions precluding class-wide relief where the language is silent or ambiguous. Defendants also argue that the class action waiver should apply retroactively to the claims predating

February 20, 2019, even if the Court finds, as it has, that those claims are not subject to arbitration. Plaintiffs argue the waiver is unenforceable because there is no actual class action waiver and, to the extent there is a reference to a waiver, the contract should be interpreted narrowly. Plaintiffs contend that if there is any waiver, it should apply only to claims in arbitration. Plaintiffs also argue that a class action waiver cannot apply retroactively to claims predating February 20, 2019.

### a) The Language Is Unclear and Should Be Interpreted Against the Drafter

Defendants argue that the language in the 2019 Terms of Use "unambiguously" notified Plaintiffs of a class action waiver as to all claims, including those brought in federal court. Defendants' Supplemental Brief in Support of Their Motion to Compel at 6, ECF No. 142. This is incorrect. The language does not say, "You are waiving your right to bring a class action in federal court" or even, "This is a class action waiver." These statements would be clear and unambiguous. Instead, the language in Section 14 is "Please read this section carefully as *it involves* a waiver…including as a class action for residents of the U.S." (emphasis added and caps removed). Wiley Decl. Ex. E ¶ 14, ECF No. 115-5. The Court is troubled by the words "it involves". During oral arguments, Defendants analogized Section 14 to *Maldini v. Marriott Int'l, Inc.,* 140 F.4th 123, n. 1 (4th Cir. 2025), where contractual language stated, "any disputes arising out of or related to the SPG program or these SPG program terms will be handled individually without any class action and will be governed by construed and enforced in accordance with the laws of the State of New York…" The language in *Maldini* is markedly clearer than what is at issue here. In Section 14, what does "involves" mean when no further details are provided in the section, or anywhere else, about the terms of this supposed class action waiver? How would a user know what the class action waiver involves? This is ambiguous. Additionally, in *Maldini*,

the Court found that "the class-waiver provision appeared in the contract's body, in the same font as the rest of the contract, and on equal footing with all other terms…." *Id.* at 135. This is not the case where the references to the waiver in Section 14 are only in the headings.

Plaintiffs argue that this is a contract of adhesion. Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration at 9, ECF No. 151. A contract of adhesion is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Newton v. Am. Debt Servs., Inc.,* 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012), aff'd, 549 F. App'x 692 (9th Cir. 2013). Here, Binance users certainly did not have the opportunity to negotiate the 2019 Terms of Use. A contract of adhesion should be interpreted against the drafter due to the inherent power imbalance. *See Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016). Defendants concede this, but they point out that this canon of interpretation applies only where there is ambiguity. Defendants' Supplemental Reply Brief in Support of Their Motion to Compel Arbitration at 4-5, ECF No. 152. Given the ambiguities in Section 14, the Court takes a narrow interpretation.

### b) At Best, Section 14 Involves Claims in Arbitration

Even taking defendants' arguments in the most favorable light, the references to class action waiver are for arbitration purposes. The first heading of the section is particularly telling, "RESOLVING DISPUTES:  FORUM, ARBITRATION, CLASS ACTION WAIVER, GOVERNING LAW"; it later goes on to detail six subsections: a) notification of dispute, b) agreement to arbitrate, c) arbitration procedure, d) exceptions, e) notice, and f) controlling law. Wiley Decl. Ex. E ¶ 14, ECF No. 115-5. From these subsections, the Court finds that Section 14 has to do with disputes in arbitration, not federal court. With this context, "it" in "it involves"

appears to refer back to "section," which means that the reference to waiver would apply to claims in arbitration, as that is the subject of Section 14.

The Defendants cite Supreme Court cases for the proposition that Plaintiffs should be precluded from class-wide relief when a provision is ambiguous. *See Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* 587 U.S. 176 (2019); *Lamps Plus, Inc. v. Varela*. 559 U.S. 662 (2010). However, these cases were in the context of arbitration. Given that, at best, Section 14 deals with arbitration, these cases do not prevent Plaintiffs from seeking class-wide relief for their claims in federal court.

### c) Retroactivity of Class Action Waiver

The Court finds the class action waiver entirely unenforceable based on a narrow interpretation and the unclear language of Section 14. Therefore, the waiver is unenforceable as to all claims in federal court, including those that predate the effective date of the agreement, February 20, 2019.  But for completeness, the Court will briefly explain why the Defendants' retroactivity arguments fail with respect to the class action waiver.

The Defendants cite several cases to support their position. *Gauzner v. Butterfly Effects, LLC* deals with an employment agreement where the timeline surrounding covered claims was not in dispute by Plaintiff. 2025 WL417956, at *5 (E.D. Cal. Feb. 5, 2025). *Bellasco v. Wells* is a case where the "general release" covering all claims was part of a contract affecting whether someone could sue in 2012 about a defect in the roof of their home that they noticed in 2006. 183 Cal. Rptr. 3d 840, 851 (Cal. Ct. App. 2015). Finally, *Lockheed Martin Corp v. RFI Supply, Inc.* dealt with third party indemnification in a tort action. 118 F. App'x 122, 123 (9th Cir. 2004). The contracts at issue in these three cases were not unilaterally modified by defendants. By the time courts were interpreting the contracts in these three cases, the provisions at issue were the same

as when the plaintiffs initially entered them. This is not true in the case at hand where Defendants unilaterally modified the 2019 Terms of Use. Therefore, the Court does not apply these cases.

Defendants also misrepresent *Ramirez* v. *24 Hour Fitness USA, Inc.* in their supplemental briefing and oral argument when they state that it stands for retroactivity of one-sided provisions. 549 F. App'x 262, 263 (5th Cir. 2013). At issue in *Ramirez* is a release from liability for personal injury claims caused by negligence in 24 Hour Fitness's membership agreement. The plaintiff in *Ramirez* challenged the release as unenforceable because it could be modified by 24 Hour Fitness at any time. *Id*. at 264. Again, as in the other cases Defendants cite, the plaintiff in *Ramirez* was held to the precise terms she agreed to when she signed the agreement. There was no subsequent modification, as happened in this case.

The Court has already explained why retroactivity arguments fail as they pertain to modification in Section I.c. and will rest on its analysis there in refusing to apply an already unenforceable class action waiver to Plaintiffs' remaining claims.

## III.    <u>Sealed Exhibits</u>

Defendants' moved to file under seal certain exhibits they submitted to the Court as proposed exhibits to their motion. ECF No. 116. These exhibits contain "exhibits contain sensitive personal data of BHL users, including information pertaining to individuals' asset holdings and financial transactions. They also contain individuals' email and IP addresses." *Id.* at 1. The Court agrees that such material can be appropriately sealed. *See Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd*., 2020 WL 5819864, at *2 (S.D.N.Y. Sept. 30, 2020) (granting request to seal exhibit containing "customer information, including their identities and purchases").

Prior counsel for Defendant Changpeng Zhao also moved to redact the personal email address of Zhao from the Certificate of Service submitted in support of Quinn Emanuel's Motion to Withdraw as Counsel of Record. ECF No 143. This request is granted.

## CONCLUSION

For the reasons set forth by the Court, Defendants' motion to compel arbitration of claims made prior to February 20, 2019 is **DENIED** and the class-action waiver provision is unenforceable in federal court for these claims.

Defendants' motion to seal is **GRANTED**.  The Clerk of Court is respectfully directed to file under seal in ECF No. 115 the proposed exhibits attached to ECF No. 117. The Clerk of Court is also directed to redact the email of Defendant Zhao from the Certificate of Service submitted in support of Quinn Emanuel's Motion to Withdraw as Counsel of Record. ECF No 143. The Clerk of Court is also requested to terminate ECF Nos. 112, 116, and 143.


**SO ORDERED.**

**Dated: February 26, 2026**
      **New York, New York**                        **ANDREW L. CARTER, JR.**
                                                **United States District Judge**